# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: October 23, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * | * | UNPUBLISHED |
| MONICA DASILVA, | * | |
| | * | No. 18-1282V |
| Petitioner, | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Respondent's |
| AND HUMAN SERVICES, | * | Objection to Reasonable Basis; |
| | * | Influenza (Flu); Necrotizing Myopathy; |
| Respondent. | * | Statute of Limitations; Equitable Tolling; |
| * * * * * * * * * * * * | * | Mental Incapacity; Physical Incapacity. |

*Judson T. Pitts*, Tycksen & Shattuck, LLC, Draper, UT, for petitioner.
*Heather L. Pearlman*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On August 23, 2018, Monica DaSilva ("petitioner"), acting *pro se*, filed a petition for compensation in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). On July 10, 2020, petitioner filed a motion for final attorneys' fees and costs. For the reasons discussed below, I award $21,404.65 in reasonable attorneys' fees and costs.

### I.   Procedural History

Petitioner alleged that as a result of receiving an influenza ("flu") vaccination on October 17, 2014, she developed polymyositis, inclusion body myositis, and/or acute necrotizing myopathy with residual symptoms lasting for more than six months. *Id.* at ¶¶ 2-5. Petitioner also submitted limited medical records which reflected her presentation for medical treatment in

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

November 2014.  ECF No. 1, Attachments 2-20 (subsequently stricken for failure to meet the Vaccine Guidelines, pursuant to Order issued January 7, 2019 (ECF No. 21)).

During an initial status conference, I discussed that the petition seemed to be filed "approximately ten months outside of" the statute of limitations period.  Scheduling Order filed September 18, 2018, ECF No. 8.  Petitioner confirmed that this was true but requested an exception to the statute of limitations due to the severity of her injury, thus invoking the doctrine of equitable tolling.  *Id.*  Respondent supported dismissal of the claim and was ordered to file a formal motion to that effect.  *Id.*  Petitioner was ordered to seek counsel to represent her in the claim, including filing of a response to the motion to dismiss.  *Id.*

On October 10, 2018, respondent filed a motion to dismiss the petition.  Resp. Mot. (ECF No. 9).  Respondent opposed the application of equitable tolling based on mental and/or physical incapacity to vaccine injury claims generally and also disagreed that petitioner had made that showing in her particular case.  Respondent noted that his position was based on the "limited medical records that were filed with the petition" and requested that petitioner file all records required by 42 U.S.C. § 300aa-11(c)(2) and Vaccine Rule 2(c)(2). Resp. Mot. at n. 1.

On February 6, 2019, attorney Mr. Judson Pitts was substituted as petitioner's counsel.  ECF Nos. 18, 20.  The Court struck the medical records accompanying the *pro se* petition (ECF No. 1 - Attachments 1-20), her affidavit (ECF No. 14), and her response to the motion to dismiss (ECF No. 19) for not complying with the Vaccine Guidelines.  ECF No. 21.  The Court also struck additional medical records filed by petitioner's counsel (ECF No. 22, ECF No. 23 – Attachment 1) for the same issues.  ECF No. 28.  On February 22, 2019, petitioner refiled her response to the motion to dismiss.  Pet. Response (ECF No. 23).

On March 25, 2019, respondent filed a reply.  Resp. Reply (ECF No. 24).  Respondent noted that many of the medical records dated from both before and after the vaccination at issue remained outstanding and: "For the purposes of petitioner's claim that she was incapacitated through at least August 23, 2015, the dearth of medical records dated from March 18 – August 23, 2015, is particularly relevant."  *Id.* at n. 5.

During a status conference with petitioner and both parties' counsel, I discussed that it was "crucial that petitioner file all medical records and other evidence supporting her claim."  Scheduling Order filed June 6, 2019 (ECF No. 29) at 2.  It appeared that petitioner "ha[d] not filed any (or hardly any) medical records dating between March/ April 2015 until early 2016."  *Id.* at 3.  Mr. Pitts stated that another attorney possessed additional medical records and/or other evidence about petitioner's condition.  *Id.*  This other attorney had represented petitioner from June 8, 2016 to early 2017, in a successful claim for Social Security disability income (SSDI).  *Id.* at n. 3-4.  I directed Mr. Pitts to seek a subpoena for these records, which I authorized.

On August 14, 2019, petitioner refiled much of the evidence from earlier as well as additional evidence, most significantly the subpoenaed SSI records (ECF No. 40).  On September 5, 2019, respondent filed a supplemental response, in which respondent confirmed his position that the newly filed evidence "clearly demonstrate[d]" that equitable tolling in petitioner's case was not warranted.  Resp. Response to Supplemental Evidence filed September

5, 2019 (ECF No. 46).  Petitioner did not file further evidence or argument in support of her claim.  I deemed the matter to be ripe for adjudication.

On December 10, 2019, I issued a decision holding that even if the Vaccine Act permits equitable tolling on the basis of mental and/or physical incapacity, in petitioner's case, a full review of the record did not support that finding.  Accordingly, I granted respondent's motion to dismiss the petition for being filed outside of the statute of limitations and not entitled to equitable tolling.  Dismissal Decision (ECF No. 47).  On January 16, 2020, the Clerk of Court entered judgment on the dismissal decision (ECF No. 49).

On March 25, 2020, petitioner filed a notice of appeal of the dismissal decision, which was addressed to the U.S. Court of Appeals for the Federal Circuit.  Notice of Appeal (ECF No. 50).  Respondent filed a motion to dismiss the appeal on the grounds that the appeal was unavailable because petitioner had not previously sought review from a judge on the U.S. Court of Federal Claims.  On April 29, 2020, the Federal Circuit granted respondent's motion to dismiss the appeal.  Federal Circuit Order (ECF No. 51), citing 42 U.S.C. § 300aa-12(e); *Grimes v. Sec'y of Health & Human Servs.*, 988 F.2d 1196, 1198 (Fed. Cir. 1993) (stating that the statutory scheme governing Vaccine Act claims makes a motion for review filed with the Court of Federal Claims "a prerequisite for appeal" to the Federal Circuit).

On July 6, 2020, petitioner filed the instant application for attorneys' fees and costs.  Pet. Fees App. (ECF No. 52).  She requested attorneys' fees in the amount of $42,709.30 and attorneys' costs in the amount of $94.30, for a total attorneys' fees and cost request of $42,823.60.  Pet. Fee App. at 3.  On July 20, 2020, respondent filed a response, in which he avers that petitioner has failed to establish reasonable basis for her claim and therefore is not entitled to receive an award of attorneys' fees and costs under the Vaccine Act.  Resp. Objection (ECF No. 53) at 1, citing 42 U.S.C. § 300aa-15(e)(1).  After receiving one unopposed extension of time, on August 3, 2020, petitioner filed a reply arguing that there was reasonable basis for her claim and that she should receive reasonable attorneys' fees and costs.  Pet. Reply (ECF No. 55).  This matter is now ripe for adjudication.

## II.     Reasonable Basis

### A.  Legal Standard

The Vaccine Act provides that reasonable attorneys' fees and costs "shall be awarded" for a petition that results in compensation.  § 15(e)(1)(A)-(B).  Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1).  The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012) (*en banc*) (*Cloer II*).

Of particular relevance to the instant case, *Cloer* concerned a petition which was determined to be filed outside of the Vaccine Act's statute of limitations. The Federal Circuit, *en banc*, affirmed that the petition was untimely, held that the Vaccine Act was subject to equitable tolling in "extraordinary circumstances", but ultimately held that the petitioner herself had not demonstrated those extraordinary circumstances in her own case. *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322 (Fed. Cir. 2011) (*en banc*) (*Cloer I*). Afterwards, the petitioner moved for an award of attorneys' fees and costs, which respondent opposed. The Federal Circuit, *en banc*, held: "A petitioner who asserts an unsuccessful but nonfrivolous limitations claim should be eligible for a determination of whether reasonable attorneys' fees and costs incurred in proceedings related to his or her petition should be awarded." *Cloer II*, 675 F.3d 1358, 1364. The Federal Circuit planned to remand to the special master to determine whether the untimely petition was indeed filed in good faith and supported by a reasonable basis. *Id.* Respondent's petition for certiorari was granted by the Supreme Court, where a majority held, in an opinion by Justice Sotomayor, that a petition filed outside of the limitations period is *eligible* for an award of attorneys' fees and costs. *Sebelius v. Cloer*, 569 U.S. 369, 80 (2013) (*Cloer III*). However, special masters remain responsible for determining "whether these late petitions were brought in good faith and with a reasonable basis". *Id.* at 381. The Supreme Court stated: "[W]hen adjudicating the timeliness of a petition, the special master may often have to develop a good sense of the merits of a case, and will therefore be able to determine if a reasonable basis exists for the petitioner's claim, including whether there is a good-faith reason for the untimely filing." *Id.* at 382. The Supreme Court concluded that a petition filed under the Vaccine Act which is "found to be untimely may qualify for an award of attorneys' fees if it is filed in good faith and there is a reasonable basis for its claim." *Id.*

"Good faith" and "reasonable basis" are two distinct requirements. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham*, 971 F.3d at 1344.

The Federal Circuit has recently clarified that reasonable basis, on the other hand, is an objective test satisfied through objective evidence. *Simmons*, 875 F.3d at 635. While the Court in *Simmons* did not identify what constituted subjective versus objective evidence, it did specify two forms of evidence that were subjective: 1) evidence of attorney conduct and 2) a looming statute of limitations. *Id.* Consideration of these two types of evidence in a reasonable basis analysis constitutes an abuse of discretion. *Id.*

As a corollary to *Simmons*, the Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The Court also held that the special master should consider as objective evidence a vaccine package insert, specifically a section titled "Adverse Reactions" which listed several injuries that were

4

also listed in the petitioner's medical records.  *Id.*  The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances".

Reasonable basis is not defined in the Vaccine Act or the Federal Circuit's case law. However, it has been characterized as a degree of evidence which supports a "feasible" claim for recovery.  *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018).  This degree of evidence is less than what is required to prove entitlement to compensation.  *Cottingham* at 1346 (citing *Chuisano,* 116 F. Cl. at 287).  In *Cottingham*, the Federal Circuit stated: "More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for… reasonable basis."  *Id.*

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds.  *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis").  "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven."  *Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### B. Respondent's Position

Respondent avers that petitioner has failed to establish a reasonable basis for her claim and is thus not entitled to an award of attorneys' fees and costs.  Resp. Objection at 6. Respondent states that such awards are not mandatory, that the petitioner bears the burden of establishing reasonable basis, and that the determination is ultimately within the special master's discretion.  *Id.* at 6-7.  Respondent emphasizes the Federal Circuit's recent holding in *Simmons*, summarizing: "The binding effect of *Simmons* is clear: the reasonable basis analysis must focus on whether there is evidentiary support for the essential elements of the claim set forth in the petition, not whether counsel acted reasonably in filing the petition."  *Id.* at 8.

Respondent's arguments for specifically contesting reasonable basis in this case are as follows:

> There is no question that the petition was untimely filed, by a significant (ten month) period of time.  The record evidence fails to support petitioner's claim of incapacity; indeed, she filed an SSDI claim during her hospitalization during the winter of 2015, and the SSDI records 'reflect that petitioner maintained mental and physical capacity after her discharge.'  *See* Dec. at 24-25.  Lastly, the records demonstrate that the symptoms of petitioner's alleged vaccine-related injury began weeks before receiving the flu vaccination; thus, even if petitioner's claim had been timely filed, or equitable tolling had been applied, there was no reasonable basis for the allegation that the vaccine caused-in-fact her condition.

Resp. Objection at 8.

### C. Petitioner's Position

Petitioner does not address reasonable basis in the initial application for attorneys' fees and costs. In the reply, petitioner avers that I ordered her to seek counsel to represent her in the claim, including filing of a response to the motion to dismiss. Pet. Reply at 4. Petitioner states:

> It is inherent in this order by the Special Master that there was a reasonable basis upon which to employ the services of an attorney, to perform work in furtherance of petitioner's claim. Had there not been a reasonable basis for the assertion of equitable tolling, the Special Master should have dismissed the Petition out of hand, and saved the parties, the Court, and especially Petitioner's counsel (who had to learn all of the rules of this Court, get admitted to the Bar, read all the relevant case law, and formulate a response argument on the doctrine of equitable tolling in reliance on the Special Master's order that his client get counsel) costs and fees.

*Id.* at 4-5. Petitioner also avers that in the dismissal decision, I noted "ample case law justifying petitioner's invocation of the doctrine of equitable tolling". *Id.* at 5. Petitioner also notes respondent's concession that while the present case was pending, the Federal Circuit had not resolved whether the Vaccine Act indeed permits equitable tolling on the basis of incapacity. *Id.*, citing Resp. Objection at 5, n. 2, citing *K.G. v. Sec'y of Health & Human Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020). Petitioner avers: "Accordingly, the key question is whether a 'reasonable basis' existed for invoking the doctrine of equitable tolling, considering the case did not advance past respondent's motion to dismiss [on the grounds that the petition was not timely filed]. Under the standards argued by the respondent, petitioner had both a legal and factual 'reasonable basis' for her position." Pet. Reply at 5.

Petitioner stresses that in the decision evaluating petitioner's claim of incapacity, I evaluated the objective contemporaneous records as well as the later statements from petitioner, her treating providers, and other witnesses. Pet. Reply at 5-6. Petitioner avers that my ultimate finding that the evidence did not support a finding of incapacity for the requisite ten months does not mean that there was not a reasonable basis for pursuing that argument. *Id.* at 6.

Petitioner does not address respondent's separate argument that even if petitioner's claim had been timely filed, or equitable tolling had been applied, there was not reasonable basis because the records demonstrate that the symptoms of petitioner's alleged vaccine-related injury began weeks before receiving the flu vaccination. *See* Resp. Objection at 8.

### D. Discussion and Conclusion

Here, there is no allegation that petitioner or her counsel lacked good faith in pursuing the petition up until its dismissal on grounds of being untimely and not entitled to equitable tolling. However, respondent challenges reasonable basis. It is therefore necessary to evaluate 1) whether there was a reasonable basis for pursuing the limitations argument and 2) whether there was a reasonable basis for the underlying claim, during its limited pendency.

First, this petition was unquestionably filed outside of the limitations period. However, the Supreme Court held that a petition filed outside of the limitations period is *eligible* for an award of attorneys' fees and costs, but the special master must still determine whether the petition is supported by good faith and a reasonable basis. *Cloer III*, 569 U.S. at 380-82. It is surprising that neither respondent nor petitioner in her reply cited *Cloer III*. While it is not the most recent controlling case (predating *Simmons*, *Cottingham*, and *K.G.*), it remains important to the discussion.

Since *Cloer*, there have been very few opinions evaluating reasonable basis for untimely filed petitions. In one case, the special master rejected the petitioner's argument that she was "thwarted" from filing the petition in time because a lawyer gave her "erroneous advice", finding that the limitations period had already run years before petitioner spoke to the lawyer in question. *Mathis v. Sec'y of Health & Human Servs.*, No. 8-570V, 2014 WL 7664951, at *14-15 (Fed. Cl. Spec. Mstr. Dec. 23, 2014). In another case, the special master found that there was no reasonable basis for filing a petition out of time because the law "clearly established" that the statute of limitations ran from the first symptom or manifestation of the injury and that the vaccinee's medical records "clearly demonstrate[d]" symptoms of cerebral palsy five years before the petition was filed. She reasoned: "petitioner's misunderstanding of the applicable legal standard… does not make the filing of their petition reasonable". *Somosot v. Sec'y of Health & Human Servs.*, No. 13-710V, 2014 WL 6536059, at *7-8 (Fed. Cl. Spec. Mstr. Oct. 31, 2014), *review denied*, 120 Fed. Cl. 716, 720 (2015). In a third case, the special master's denial of reasonable basis took into account that the petitioners "did not present any evidence that they were mentally incapacitated to the degree that they could not pursue their legal rights." *Powers v. Sec'y of Health & Human Servs.*, No. 14-1195V, 2017 WL 1319762, at *7 (Fed. Cl. Spec. Mstr. March 7, 2017).

I have not located any reasoned past opinions evaluating whether there was reasonable basis for the untimely filing of a claim in which the petitioner has submitted evidence of alleged incapacity but was ultimately unsuccessful. That is unsurprising because this area of the law is not well-established. In *Cloer I*, the Federal Circuit sitting *en banc* held that the Vaccine Act allows equitable tolling only in "extraordinary circumstances" but recognized only the possibilities of fraud and duress. 654 F.3d at 1344. However, as noted in my dismissal decision issued in December 2019, many jurisdictions had recognized equitable tolling of various statutes on the basis of incapacity. Moreover, the Federal Circuit had concluded in the context of veterans' benefits appeals, that mental incapacity can be sufficient grounds for equitable tolling in the veterans' benefits context. *Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004). One other special master and I subsequently held, despite opposition from respondent, that mental incapacity can also be sufficient grounds for equitable tolling of the Vaccine Act. *Hodge v. Sec'y of Health & Human Servs.*, No. 09-453V, 2015 WL 9685916 (Fed. Cl. Spec. Mstr. Dec. 21, 2015); *Gray v. Sec'y of Health & Human Servs.*, No. 15-146V, 2016 WL 787166 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *Gray*, 2016 WL 6818884 (Fed. Cl. Spec. Mstr. Oct. 17, 2016). Since the dismissal of petitioner's claim, a Federal Circuit panel, citing favorably to *Barrett*, has held that equitable tolling on the basis of mental incapacity is indeed available under the Vaccine Act. *K.G. v. Sec'y of Health & Human Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020) (remanding to the special master to apply a newly formulated test, under which the petitioner must demonstrate both extraordinary circumstances and reasonable diligence). Accordingly, the controlling law

7

was not established either when the *pro se* petitioner requested an exception to the statute of limitations on the basis of incapacity or when she retained counsel who advanced that legal argument.

      I agree that there was a reasonable basis for counsel to enter the case. During the initial status conference, the *pro se* petitioner strenuously maintained that despite filing the petition outside of the statute of limitations, she should receive an exception based on the significant impact the injury had on her life, which in legal terms, would amount to equitable tolling on the basis of mental and/or physical incapacity. I directed petitioner to seek the assistance of counsel in responding to the motion to dismiss, which would include gathering and filing the medical records and other evidence. Counsel did come in, obtained, organized and filed numerous additional records. He also made a colorable argument for the extension of the law of equitable tolling. Pet. Response to Resp. Mot. at 14-17. I agree that there was a reasonable basis for counsel to enter the case. Afterwards, I carefully evaluated all of the evidence submitted. I found that the contemporaneous medical records and SSD paperwork (the latter of which was not expressly required by the Vaccine Act, the Guidelines, or respondent but proved to be important to my decision) did not support a finding of incapacity that would toll the statute long enough to render the petition timely filed.

      Apart from the untimely filing, the petition possessed reasonable basis for its limited lifespan. The record establishes that petitioner received the flu vaccination on October 17, 2014. Dismissal Decision at 8. On November 15, 2015, petitioner presented for emergency treatment (which proved to be the beginning of a lengthy course at several facilities, culminating only in her discharge from in-patient rehabilitation on March 18, 2015). Petitioner was assessed with inflammatory myositis, which was treated effectively with IVIg and later Rituxan (rituximab). This assessment and particularly these treatments are consistent with autoimmune disease. Additionally, past vaccine injury claims for influenza followed by myositis have resulted in stipulations awarding compensation to the petitioners. *See, e.g.*, *Bowsher v. Sec'y of Health & Human Servs.*, No. 18-1590V, 2019 WL 4011486 (Fed. Cl. Spec. Mstr. July 30, 2019); *Dilshaver v. Sec'y of Health & Human Servs.*, No. 16-716V, 2019 WL 4120696 (Fed. Cl. Spec. Mstr. July 25, 2019); *Bartkus v. Sec'y of Health & Human Servs.*, No. 15-261V, 2018 WL 6166863 (Fed. Cl. Spec. Mstr. Oct. 29, 2018); *Colvis v. Sec'y of Health & Human Servs.*, No. 13-841V, 2015 WL 550931 (Fed. Cl. Spec. Mstr. Jan. 14, 2015).

      Respondent avers that there was no reasonable basis for the allegation that the flu vaccine caused petitioner's injury because "the symptoms of petitioner's alleged vaccine-related injury began weeks before[hand]". Resp. Objection at 8. Respondent avers that petitioner complained of pain, inflexibility, and stiffness in her upper and lower extremities approximately two months before the vaccination.[3] *Id.* at 1, citing Dismissal Decision at 7. However, respondent does not mention that petitioner was describing these complaints, as well as a long history of trauma, while establishing care with a new chiropractor in a new state of residence. Dismissal Decision at 7. This chiropractor assessed petitioner with cervical, thoracic, and lumbar dysfunction. *Id.*

---

[3] Respondent inadvertently states that this chiropractic visit was "in late August 2019". Resp. Objection at 1. A review of my decision dismissing petitioner's claim and the underlying evidence makes clear that the chiropractic visit was in late August 2014.

8

Respondent also emphasizes that petitioner reported concerns about decreased physical strength, difficulty swallowing, and weight loss prior to the vaccination. Resp. Objection at 1-2, citing Dismissal Decision at 7-9. There is indeed some potential that these symptoms represented the pre-vaccination onset of myositis. However, it is clear that several weeks after receiving the flu vaccination, petitioner's condition worsened to the point that she sought emergency treatment, she received a diagnostic work-up and treatment, and she was not discharged home for four months. (And it is clear that she suffered residual symptoms for more than six months.) The Vaccine Act does not limit a petition to alleging that a vaccine caused the *initial* onset of an injury; alternatively, the petition may allege that a vaccine *significantly aggravated* a preexisting injury. 42 U.S.C. § 300aa-11(c)(1)(C). While this petition, filed *pro se*, does not allege a significant aggravation claim in the alternative, I find potential for that allegation based on the undeveloped record before me. However, if the claim was accepted as timely filed, petitioner would have needed a medical expert to address whether any of the various pre-vaccination symptoms (which appear non-specific to a layperson) represented the onset of her myositis and if so, whether the vaccine significantly aggravated her condition.

I have considered the totality of the circumstances including the colorable argument for equitable tolling on the basis of incapacity; the objective evidence of vaccination, injury shortly thereafter, and residual symptoms lasting for more than six months; the autoimmune nature of the injury; past awards of compensation for that injury following flu vaccination; and the potential of a significant aggravation claim. I find that there was a reasonable basis supporting petitioner's claim until it was dismissed.

### III. Reasonable Attorneys' Fees and Costs

#### A. Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

### B. Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.,* 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Of note, the *Davis County* involved attorneys practicing in Salt Lake City, Utah. *Davis*, 169 F.3d at 760 (characterizing Utah as "the less expensive legal market" in comparison to Washington, DC. Similarly, within the Vaccine Program, an attorney based in Salt Lake City, Mr. David Charles Richards, has consistently been placed under the *Davis County* exception and awarded hourly rates based on his local market, not the forum rate of Washington, D.C. *Smith v. Sec'y of Health & Human Servs.*, No. 17-302V, 2019 WL 7557790, *2 (Fed. Cl. Spec. Mstr. Dec. 20, 2019); *McClellan v. Sec'y of Health & Human Servs.*, No. 14-714V, 2017 WL 5382907, *4 (Fed. Cl. Spec. Mstr. Sept. 29, 2017); *Atnip v. Sec'y of Health & Human Servs.*, No. 14-1006V, 2016 WL 4272057, *3-4 (Fed. Cl. Spec. Mstr. July 6, 2016). Mr. Richards, who has been practicing law since 1991 and has been recognized as a "seasoned attorney with particular experience in the Vaccine Program", *Atnip*, 2016 WL 4272057 * 4, has been awarded $321.00 per hour for work performed in 2018 and $332.00 per hour for work performed in 2019. His 2020 rate has not been set, based on my research.

Here, petitioner's counsel Mr. Judson Pitts is also based in the Salt Lake City, Utah metropolitan area. According to the billing records, all or substantially all of the work on the case was performed in that market. Mr. Pitts was admitted to practice law in 2003. Pet. Fee App. at 36.[4] However, this was his first case in the Vaccine Program (and before the Court of Federal Claims more generally). Mr. Pitts avers based on his review of the *Davis* case, Mr. Richards's rate in the Vaccine Program, and his own qualifications, that he should be awarded $250.00 per hour for work performed in 2018 – 2020. Pet. Fee App. at 3. Upon review and

---

[4] *See also* Utah State Bar Member Directory – Judson Pitts, available at https://services.utahbar.org/Member-Directory/Profile?customercd=9946 (reflecting that Mr. Pitts was admitted to the Utah State Bar in 2003 and is an active member) (last visited October 20, 2020).

particularly based on a comparison with Mr. Richards, who has an additional 12 years of legal experience generally and significantly more experience specifically in the Vaccine Program, I find that the requested rate of $250.00 per hour is reasonable. However, as discussed below, significant adjustments will be made to the hours expended on the case.

Mr. Pitts avers that his assistant Laura Kaplan – who has been employed in his office since 2018 and possesses both a paralegal certification and an associates' degree in Legal Studies – should be compensated at hourly rates of $75.00 in 2019 and $80.00 in 2020. *Id.* at 2-4. I find that these rates are reasonable and will be awarded without adjustment.

Finally, Mr. Dean Becker (who is a retired lawyer who helped petitioner prepare the petition which was filed *pro se* and also helped Mr. Pitts with the later filings) requests hourly rates of $100.00 in 2018, $103.00 in 2019, and $105.00 in 2020. *Id.* at 2-4. This rate is similar, albeit slightly higher, to the rate awarded for the paralegal/assistant addressed above. I find that it is reasonable, although as discussed below, I find that the hours expended in 2018 are not compensable.

### C. Hours Expended

The fee request does not include a total number of hours or subtotals for each individual. I have thoroughly reviewed the billing records with cross-reference to the docket in this case. A special master may rely on his or her experience and judgment to evaluate the reasonableness of hours expended. *Id.* Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521. And as previously noted, a special master is not required to perform a line-by-line evaluation of a fee application. *Wasson*, 24 Cl. Ct. at 484. It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case"); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V (Fed. Cl. Spec. Mstr. Nov. 2, 2016), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016) (approving the chief special master's reduction of one firm's fees by twenty percent and a second firm's fees by forty percent). That said, the following issues were of particular concern.

#### 1. Retired Attorney Mr. Becker

The Vaccine Act permits an award of only those reasonable attorneys' fees and costs that are "*incurred* in any proceeding on such petition". 42 U.S.C. § 300aa-15(e) (emphasis added). "[I]n ordinary usage, … to 'incur' expenses means to pay or become liable for them." *McCulloch v. Sec'y of Health & Human Servs.*, 923 F.3d 998, 1003 (Fed. Cir. 2019) (affirming the special master's award of attorneys' costs associated with maintaining a guardianship which

11

was required by state law and the proffer awarding compensation); citing *Black v. Sec'y of Health & Human Servs.*, 93 F.3d 781, 785 (Fed. Cir. 1996). Special masters have routinely denied attorneys' fees that are billed by *pro se* petitioners and their personal associates with whom they have not formed an attorney-client relationship, on the reasoning that the fees have not been "incurred" under the meaning of the Vaccine Act. *See, e.g.*, *Riley v. Sec'y of Health & Human Servs.*, 1992 WL 892300 (Fed. Cl. Spec. Mstr. March 26, 1992) (denying attorneys' fees billed by a petitioner who was himself an attorney on the grounds that his work on the case constituted self-help); *Koii v. Sec'y of Health & Human Servs.*, No. 05-438V, 2007 WL 5161800 (Fed. Cl. Spec. Mstr. Nov. 21, 2007) (the petitioner's spouse, an active practicing attorney); *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525 (Fed. Cl. Spec. Mstr. May 31, 2013) (finding "nothing in the record to suggest that Ms. Underwood entered into a 'formal, established attorney-client relationship' with her brother"). It may debatable how far the "self-help" extends beyond petitioners themselves and their family members to their other acquaintances. However, it remains crucial for the petitioner to "incur" the attorneys' fees, by for instance, establishing a formal attorney-client relationship.

Additionally, under the Vaccine Rules, an attorney must be admitted to the Bar of the Court of Federal Claims to be eligible to practice in the Vaccine Program. *See* Vaccine Rule 14(a)(1) (providing that as a prerequisite to admission to the CFC bar, an attorney must be in good standing with the bar of the highest court of another state or other jurisdiction within the United States). Where an attorney is not eligible to practice before this Court, there can be no basis for such counsel to recover attorneys' fees under the Vaccine Act. *See, e.g., Underwood*, 2013 WL 3157525, at *3-4.

Here, the fee application includes work expended by Mr. Dean Becker. *See* Pet. Fee App. - Tab A at 21-23. Mr. Becker is described as a "former (retired/ inactive) attorney who helped the petitioner prepare her claim in this case *pro se*". Pet. Fee App. – Tab C at ¶ 9. His timesheet reflects that he first met with petitioner on July 20, 2018; helped to draft and file the *pro se* petition; and contacted Mr. Pitts who agreed to take the case in December 2018. Pet. Fee App. – Tab A at 21. Because there is no evidence that petitioner "incurred" any legal obligation to pay for this retired attorney's assistance with her claim, which was indeed filed *pro se*, those costs are not compensable. This represents approximately 42.7 hours logged by Mr. Becker in 2018.

This is in contrast to when Judson Pitts, petitioner's attorney of record, started billing in late 2018 and hired Mr. Becker as an assistant "specifically to assist with this claim during 2019." Pet. Fee App. – Tab C at 4. At this point, it seems that Mr. Pitts, an active attorney who gained admission to practice before the Court of Federal Claims, was supervising Mr. Becker as an assistant/ paralegal, whose fees were "incurred" and therefore reimbursable.

2. **Admission to the Bar**

Mr. Pitts billed at least 12.0 hours expended to obtain admission to the bar of the U.S. Court of Federal Claims (USCFC).[5] Mr. Becker billed 1.5 hours to assist Mr. Pitts to obtain a letter of recommendation.[6] Ms. Kaplan billed 2.5 hours to pick up supporting letters of recommendation and a certificate of good standing, then mail the completed application to the Court.[7] Fees (and costs, as addressed below) related to counsel's bar admission are not compensable. *See, e.g.*, *Raymo*, 2016 WL 7212323, at *12 (denying such fees); *Oswalt v. Sec'y of Health & Human Servs.*, No. 03-2153V, 2011 WL 2149932, at *13 (Fed. Cl. Spec. Mstr. May 2, 2011) (characterizing admission to practice before this new jurisdiction as a "professional enhancement"); *Velting v. Sec'y of Health & Human Servs.*, No. 90-1432V, 1996 WL 937626, *1-2 (Fed. Cl. Spec. Mstr. Sept. 24, 1996) (following past cases where special masters reasoned that the bar admission "conferred an ongoing benefit to counsel", even though counsel in *Velting* argued that he sought admission specifically for that case and it appeared unlikely that he would use it again).

3. **Research Regarding the Vaccine Program**

It is well-established that counsel cannot not bill for educating themselves about basic aspects of the Vaccine Program. *See, e.g.*, *Doherty v. Sec'y of Health & Human Servs.*, No. 15-1429v, 2020 WL 2958291, at *8 (Fed. Cl. Spec. Mstr. May 7, 2020); *Antolick v. Sec'y of Health & Human Servs.*, No. 16-1460v, 2020 WL 524776, at *5 (Fed. Cl. Spec. Mstr. Jan. 13, 2020), citing *Helton v. Sec'y of Health & Human Servs.*, No. 16-234V, 2017 WL 4020452, at *5) (Fed. Cl. Spec. Mstr. Aug. 28, 2017); *see also Goldie v. Sec'y of Health & Human Servs.*, No. 18-1476V, 2019 WL 7496619, at *4 (Fed. Cl. Spec. Mstr. Dec. 6, 2019) (providing additional case law). Here, Mr. Pitts billed approximately 11.0 hours on general research of the Vaccine Program, the procedural rules, and the applicable legal standards.[8] Mr. Becker billed approximately 14.7 hours on the same.[9] This does not include the additional time billed for

---

[5] Pet. Fee App., Tab A at 2 (December 17, 2018 – 1.0 hour); *id.* (December 19, 2018 – 0.5 hour); *id.* (December 20, 2018 – 0.5 hour); *id.* at 3 (December 28, 2018 – 0.1 hour); *id.* at 4 (January 14, 2019 – several entries totaling 1.6 hours); *id.* (January 22, 2019 – 1.0 hour); *id.* (January 23, 2019 – 2 hours); *id.* at 5 (January 28, 2019 – 4 hours); *id.* at 5 (January 30, 2019 – 6.0 hours for various tasks, including bar application); *id.* at 6 (February 4, 2019 – 8.0 hours for various tasks, including bar application).

[6] Pet. Fee App., Tab A at 22 (January 14, 2019 entry).

[7] Pet. Fee App., Tab A at 5 (January 28, 2019 entry).

[8] *See, e.g.*, Pet. Fee App., Tab A at 2 (December 4, 2018 entry of 1.5 hours for "research re: Federal Court of Claims and Vaccine Program"); *id.* at 6 (February 8, 2019 entry of 1.0 hours for "Receipt of Order from CFC requiring the filing of medical records and amendment of memorandum in opposition; look up rules on medical records filing"); *id.* (February 11, 2019 entry of 2.0 hours for "Reviewed rules for medical records"); *id.* (February 12, 2019 entry of 2.0 hours for "Continued reviewing Vaccine Rules for medical records, filing, documenting opposition memoranda"); *id.* at 9 (April 4, 2019 (April 5, 2019 entry of 3.0 hours for "research case procedure with CFC/Vaccine Program re: Notice to Submit, filing for leave to file sur Replies; Scheduling etc…; phone calls to other vaccine counsel"); *id.* at 11 (June 10, 2019 entry of 1.5 hours for tasks including "review of CFC Rules and Vaccine Rules").

[9] *See, e.g.*, Pet. Fee App., Tab A at 22 ((January 2, 2019 entry of 1.9 hours including "Research RCFC discovery

repeated communications, presumably asking for advice, from other attorneys with more experience in the Vaccine Program.[10] An attorney may well need to learn the procedural rules and understand the applicable case law upon entering the Vaccine Program, but it is not appropriate to bill that research to his or her first case.

### 4. Excessive and Unnecessary Billing

As stated above, the Vaccine Act's "reasonable" standard bars hours that are "excessive, redundant, or otherwise unnecessary". From *Hensley v. Eckerhart*, 461 U.S. 424. Additionally, the Vaccine Program places a high premium on contemporaneous, objective medical records and other such documentation. A petitioner's claim must have "supporting documentation" including "vaccination records associated with the vaccine allegedly causing the injury, pre- and post-injury physician or clinic records (including all relevant growth charts and test results), [and] all post-injury inpatient and outpatient records". 42 U.S.C. § 300aa-11(c)(2) (requiring that the petition is accompanied by all pre- and post-vaccination medical records); § 13(a) (prohibiting the special master from awarding compensation "based on the claims of a petitioner alone"); *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993) (holding that contemporaneous medical records "warrant consideration as trustworthy evidence"); *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (holding that later testimony "must be consistent, clear, cogent, and compelling" to outweigh such earlier contemporaneous evidence).

Here, petitioner, with the behind the scenes assistance of Mr. Becker, filed the petition *pro se* accompanied by limited medical records, predictably less than what was required under the Vaccine Act. Respondent noted in his motion to dismiss, filed October 10, 2018, that he derived the facts "from the limited medical records that were filed with the petition". Resp. Mot. at n. 1. I then ordered petitioner to seek counsel and file a response to the motion to dismiss, specifically stating: "If by this deadline, a lawyer has entered his or her appearance but needs additional time to prepare a response, he or she may file a motion for extension of time." *See* Scheduling Order filed October 16, 2018 (ECF No. 10) at 2. In the subsequent months, Mr. Pitts agreed to take the case, but he did not seek any additional medical records. Instead, he entered his appearance and filed an opposition to respondent's motion which cited solely to *affidavits* from petitioner and numerous other individuals. Pet. Response filed February 6, 2019 (ECF No. 19) (stricken for filing issues), refiled February 22, 2019 (ECF No. 23). This opposition brief made several arguments including that petitioner received an initial dose of rituximab which made her seem temporarily more capable in March 2015 but she deteriorated afterwards, *see* Pet. Response at 21-22, and that she was not capable to pursue a SSDI claim until over a year later, *id.* at 18, 22. Afterwards, I encouraged and authorized a subpoena for the production of petitioner's full SSDI record, which included *all* of petitioner's medical records, which did not

---

rules and find no Rule 26 pretrial disclosures" and "researc[h] how to take early depo of UoU drs"); *id.* at 23 (January 10, 2020 entry of 5.2 hours to research the rules concerning deadline to file motion for review); *id.* (January 29, 2020 entry of 1.2 hours for further research of the Vaccine Rules "to determine deadlines and whether to review or appeal").

[10] *See, e.g.*, Pet. Fee App – Tab A at 2 (December 27, 2018 "phone calls with attorney in Boston and in Salt Lake City; e-mail to David Richards"); *id.* at 4 (January 2, 2019 "email to David Richards"); *id.* at 9 (April 4, 2019 "phone calls to other vaccine counsel").

support the assertions made in her brief. I find that counsel's significant billing to prepare affidavits and a brief that were not corroborated by the contemporaneous records was excessive and unnecessary. I appreciate that petitioner's counsel eventually obtained the records, with support of subpoenas authorized by the Court, in August 2019. However, a better interview of petitioner and efforts to obtain these important records would have saved petitioner's counsel, as well as respondent's counsel and the Court, valuable time.

5. **Response to the Dismissal Decision**

Another category of the billing was unnecessary and/or impermissible research. Namely, on January 9, 2020, Mr. Pitts writes that "no notice of December 10 [Dismissal] Decision provided to us". Pet. Fee App – Tab A at 18. Afterwards, he and Mr. Becker expended approximately 10 hours speaking with petitioner, determining whether to file a motion for review (including whether the 30-day deadline ran from the date of filing or the later date that the decision was posted onto the Court's website), researching the Court's rules, beginning to draft a motion for review, and eventually filing an appeal to the Federal Circuit which was rejected as there was no prior motion for review. Pet. Fee App. – Tab A at 17-18, 23. I do not find this to be reasonable because when Mr. Pitts entered his appearance in the case in February 2019, he provided an email address to which he requested that all documents be sent. *See* Notice (ECF No. 17). In the ensuing months, multiple orders were filed on CM/ECF and delivered to the same email address. Mr. Pitts did not notify my chambers about any issues receiving CM/ECF notifications. The dismissal decision was sent to the same email address, as shown below:

```
Notice of Electronic Filing

The following transaction was entered on 12/10/2019 at 4:48 PM EST and filed on 12/10/2019
Case Name:        DASILVA v. SECRETARY OF HEALTH AND HUMAN SERVICES
Case Number:      1:18-vv-01282-UNJ
Filer:
Document Number: 47

Docket Text:
DECISION (Redactions due by 12/24/2019). Signed by Special Master Thomas L. Gowen. (kb) Service on parties made

1:18-vv-01282-UNJ Notice has been electronically mailed to:

Heather Lynn Pearlman    heather.pearlman2@usdoj.gov, vaccine.ecf@usdoj.gov

Judson Tolman Pitts    judsonpitts@hotmail.com
```

Even allowing for the possibility that the CM/ECF notification was inadvertently deleted or redirected, counsel has an obligation to periodically check the docket in his case. *Moczek v. Sec'y of Health & Human Servs.*, 776 Fed. App'x 671, n. 3 (Fed. Cir. 2019) ("Even if counsel did not receive email notification of the orders, he had an obligation to monitor the docket"). This error generated the subsequent billing for research into extending the deadline for a motion for review and instead filing an appeal which was not accepted by the Federal Circuit. I am not willing to reimburse these costs.

### 6. Preparation of the Fee Application

Finally, within the Vaccine Program, counsel is required to keep contemporaneous billing records. Vaccine Guidelines at 7 ("Careful and contemporaneous documentation… is required to establish that the fees and costs claimed are reasonable"). Here, Mr. Pitts expended at least 7 hours to prepare the attorneys' fees and costs application in May 2020. *See* Pet. Fee App. – Tab A at 19-20. Given that the application did not include any complex legal arguments (e.g., preemptively defending reasonable basis) and contained only four receipts supporting the costs, it seems likely that counsel spent a fair amount of time recreating or filling in the billing entries, which should have been done contemporaneously. Billing for this task as well is unreasonable and should not be compensated.

**For all of the foregoing reasons and to achieve a reasonable result, I find that it is within my discretion to reduce petitioner's total fee request by fifty per cent. This results in a reduction of $21,404.65.**

### D. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira*, 27 Fed. Cl. 29, 34. Here, petitioner requests reimbursement of $94.30, including $20.00 for obtaining a certificate of Mr. Pitt's good standing with the Utah State Bar association and $24.30 for mailing his application to the Court of Federal Claims. Pet. Fee App., Tab A at 7, 19; Tab B at 2, 4. But as noted above, fees and costs associated with gaining admission to practice before the Court of Federal Claims are not compensable. *See, e.g.*, *Raymo*, 2016 WL 7212323, at *12; *Oswalt*, 2011 WL 2149932, at *13; *Velting,* 1996 WL 937626, at *1-2.

## IV. Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **GRANTED**. Final attorneys' fees and costs are awarded as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $42,709.30 |
| (Deductions) | -$21,354.65 |
| **Attorneys' Fees Awarded** | **$21,354.65** |
| | |
| Attorneys' Costs Requested | $   94.30 |
| (Deductions) | -$   44.30 |
| **Attorneys' Costs Awarded** | **$   50.00** |
| | |
| **Attorneys' Fees and Costs Awarded** | **$ 21,404.65** |

Accordingly, the following is awarded:

1) **A lump sum in the amount of $21,404.65, representing reimbursement for *final* attorneys' fees and costs, in the form of a check payable jointly to petitioner and her attorney Judson T. Pitts.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[11]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[11] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).